24CA0634 Peo in Interest of JNRA 10-17-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0634
City and County of Denver Juvenile Court No. 22JV30597
Honorable Ronald M. Mullins, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.N.R.A., a Child,

and Concerning A.J.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

---

Kerry Tipper, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    A.J.A. (mother) appeals the judgment terminating her parent-child legal relationship with J.N.R.A. (the child). We affirm.

## I.    Background

¶ 2    In October 2022, the Denver County Department of Human Services (the Department) filed a petition in dependency and neglect regarding the then-two-year-old child, based on concerns about mother's recent drug use. The petition noted that mother had a history of using substances, including methamphetamine and alcohol. It also explained that the child had been removed from mother's care in a prior dependency and neglect case but had been returned after mother successfully completed her treatment plan.

¶ 3    The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan that required mother to engage in substance abuse treatment and supervised family time. About six months later, the child was placed with kin in Arkansas.

¶ 4    Approximately a year after the petition was filed, the Department moved to terminate mother's parental rights. The juvenile court held a hearing in November 2023 and denied the motion, finding that the Department had not made reasonable efforts to provide substance abuse services to mother in the

1

previous six months because there was no open referral for such services during that time. But the court explained that based on its concerns about mother's active substance use, it would not set the case out for a full six months, and it told mother that if she did not "hit the ground running" with treatment, it "fully expect[ed]" there would be another motion to terminate her parental rights.

¶ 5 The Department moved for reconsideration of the juvenile court's order denying the motion to terminate. The court denied the motion, but it clarified that it had not "made a *general* finding that the Department had *never* made reasonable efforts to help [m]other overcome her substance use disorder." Rather, the court's finding about the Department's lack of reasonable efforts was "relate[d] specifically to the Department's failure to make an additional referral" for a substance abuse evaluation and treatment.

¶ 6 About three months after the first termination hearing, the Department again moved to terminate mother's parental rights. In March 2024, the juvenile court held a second termination hearing. Mother did not appear because, according to her counsel, she had recently entered "some kind of treatment," which she "hop[ed] [was] around substance use." At the conclusion of the hearing, the court

granted the motion, terminating mother's parental rights. As relevant to this appeal, the court found that mother's ongoing drug use rendered her unfit and that it was "not very likely that [mother] will conquer her drug dependency over any reasonable time period."

## II.   Fit Within a Reasonable Time

¶ 7      Mother contends that the juvenile court erred by finding she could not become fit within a reasonable time because the second termination motion was filed only three months after the first one was denied, and she had recently begun treatment. We disagree.

## A.   Standard of Review

¶ 8      A juvenile court's termination of parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. We review the juvenile court's factual findings for clear error and its legal conclusions de novo. *Id.*

¶ 9      The credibility of the witnesses, the probative effect and weight of the evidence, and the inferences and conclusions to be drawn from the evidence are within the province of the juvenile court. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). We

do not reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

### B. Applicable Law

¶ 10 The juvenile court may terminate a parent-child legal relationship if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate court-approved treatment plan, or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 11 A parent is unfit if they are unable or unwilling to give a child reasonable parental care. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 23. "Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs." *S.R.N.J-S.*, ¶ 9. A parent's failure to comply with a treatment plan may be considered in determining unfitness. *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 12 In determining whether a parent's conduct or condition is likely to change such that they may become fit within a reasonable

4

time, the juvenile court may consider whether any change has occurred during the dependency and neglect proceeding, as well as the chronic or long-term nature of the parent's conduct or condition. *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006). Parents must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates their parental rights. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007).

¶ 13     What constitutes a reasonable time is fact-specific and varies from case to case. *Id.* But a reasonable time is not an indefinite time, and it must take into account the child's physical, mental, and emotional conditions and needs. *S.Z.S.*, ¶ 24. When a parent has made little or no progress on a treatment plan, the court need not give the parent additional time to comply. *Id.*

¶ 14     Moreover, when a child is under six years old, as in this case, the juvenile court must also consider the expedited permanency planning provisions, which require that such children be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also S.Z.S.*, ¶ 25.

## C.    Analysis

¶ 15    Mother had fourteen months between the juvenile court's adoption of her treatment plan in January 2023 and the second termination hearing in March 2024 to take the steps necessary to demonstrate her fitness as a parent.  But the substance use concerns that prompted the Department's involvement persisted.

¶ 16    In particular, the juvenile court found that despite the Department's reasonable efforts, mother had made "very meager efforts" to comply with her treatment plan due to her drug dependency and was unlikely to resume compliance with the plan. The court found that mother had a "long-term issue with abusing drugs" and that "additional time [would] likely not change the conduct and conditions" that rendered her unfit.  More specifically, the court found that mother was unlikely to "conquer her drug dependency" in any reasonable time period.  And it noted the child's need for permanency, given the child's "very young age."

¶ 17    The record supports the juvenile court's findings.  The caseworker testified that mother continued to use substances and had not completed substance abuse treatment.  Mother had completed only two of the sixty required urinalysis tests, both of

6

which were positive. The caseworker testified that she made a referral for substance abuse evaluation in October 2022, which remained open until May 2023, but mother never completed that evaluation, missing all but one of fifteen scheduled appointments and leaving after fifteen minutes the one time she did attend. Then, at the first termination hearing, mother testified that she had used fentanyl that morning. And although she told the juvenile court she was planning to go to detox that day, and the caseworker offered to give her a ride, she did not go. The caseworker nevertheless made another referral for a substance abuse evaluation that day.

¶ 18 Mother points out that, after the second referral, she eventually completed the evaluation and entered treatment. But we are not persuaded that her belated efforts to do so — more than a month after the second termination motion was filed — required the juvenile court to give her more time. At the first termination hearing, the court told mother that she needed to "hit the ground running" by going to detox that day and responding to anyone who reached out to set up an evaluation or treatment. Notwithstanding that admonition, mother did not respond to the substance abuse evaluator, complete the evaluation, or enter treatment until the

week before the second termination hearing — more than four months after the first one. The court was not required to attribute more weight to this very recent evidence of mother's progress than to mother's protracted lack of engagement over the course of the case. *See A.J.L.*, 243 P.3d at 252 (holding that juvenile court may, but is not required to, give more weight to more recent evidence).

¶ 19 Mother also argues that she should have been given more time to comply with her treatment plan because the Department did not provide her with "appropriate substance abuse treatment for a significant portion of the case." And it is true that the juvenile court denied the Department's first termination motion because the Department had not made a second substance abuse evaluation referral in the six months before the first termination hearing.

¶ 20 But the initial referral was open for the first seven months of the case, and mother did not complete the evaluation during that time. Then, the second referral was open for another four months before mother finally responded to the evaluator and completed the evaluation. Thus, even excluding the time period in which there was no open referral, mother still had eleven months to complete the evaluation and failed to do so. Moreover, after denying the

Department's first termination motion, the juvenile court clarified that, other than the lack of a second substance abuse referral, the Department had made "numerous efforts" to provide services to mother and had often "gone above and beyond in doing so." The absence of an open referral for six months between May 2023 and November 2023 did not require the district court to give mother more time to complete treatment in March 2024 when she could have begun that treatment four (or seventeen) months earlier.

¶ 21    The record also supports the juvenile court's finding that mother's substance abuse was long-term. *See K.D.*, 139 P.3d at 700. The caseworker testified that this was the second case involving mother and the child. And she further testified that the concerns in the first case, which was opened in 2020, were "very similar" to the concerns in this case — mother's sobriety and overall stability. Although mother successfully completed her treatment plan in the first case, the Department began receiving new referrals concerning mother's substance use only six months after the first case closed and the child was returned to her. By the time of the second termination hearing — four years after the first case opened — mother was still struggling with substance abuse issues.

¶ 22    Finally, by the time of termination, the child had been out of mother's home for approximately seventeen months. At the first termination hearing, the caseworker testified that over the child's lifetime, the child had spent more time out of mother's care than in her care. She also opined that termination and adoption were in the child's best interests because they would provide stability. And although the caseworker did not expressly testify that the child's age was a factor in her opinion regarding permanency, the juvenile court's consideration of the child's "very young age" was consistent with the statutory requirement of expedited permanency for children under the age of six. *See S.Z.S.*, ¶ 25; § 19-102(1.6).

¶ 23    Thus, because the record supports the juvenile court's determination that mother could not become fit within a reasonable time, we will not disturb that finding. *See S.R.N.J-S.*, ¶ 10.

### III.    Disposition

¶ 24    The judgment is affirmed.

JUDGE FOX and JUDGE JOHNSON concur.